UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHAUN-THORSKRIEGER RAVENWOOD-ALEXANDER,

                Plaintiff,

    v.                                          Case No. 17-cv-7-pp

JOSEPH D. BEAHM, SEAN M. BRYAN,
RANDALL S. BOUZEK, GABRIEL UMENTUM,
TODD R. OLIG, JESSIE J. SCHNEIDER,
ANN M. SLINGER, and KELSEY BESTE,

                Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 47), DENYING
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S STATE LAW MEDICAL
MALPRACTICE CLAIM (DKT. NO. 51), AND ORDERING THAT THE PARTIES
MAY FILE DISPOSITIVE MOTIONS ON THE MERITS BY A DATE CERTAIN**

Plaintiff Shaun-Thorskrieger Ravenwood-Alexander is a Wisconsin state prisoner representing himself. He claims that on May 24, 2015 at the Waupun Correctional Institution, the defendants violated his constitutional rights, and that defendant Slinger violated his rights under Wisconsin state law,. The defendants have filed a motion for summary judgment, contending that the plaintiff failed to exhaust his administrative remedies. Dkt. No. 47. The court will grant in part and deny in part the defendants' motion. The defendants filed a separate motion to dismiss the plaintiff's state law claim against defendant Slinger. Dkt. No. 51. The court will deny this motion.

## I.    THE PLAINTIFF'S CLAIMS

On February 16, 2017, Magistrate Judge David E. Jones screened the plaintiff's complaint under 28 U.S.C. §1915A. Dkt. No. 11. Judge Jones allowed the plaintiff to proceed on the following claims, based on the plaintiff's allegations that that defendants violated his constitutional rights on May 24, 2015, while he incarcerated at the Waupun Correctional Institution: (1) defendants Beahm and Schneider allegedly used excessive force against the plaintiff in violation of the Eighth Amendment by pepper-spraying him without justification; (2) defendants Beahm, Umentum, Olig, Bouzek, Bryan and Schneider allegedly violated the plaintiff's Eighth Amendment rights by failing to decontaminate him of the pepper spray; (3) defendants Beahm, Umentum, Olig, Bouzek, Bryan, Beste (formerly Jane Doe) and Schneider allegedly violated the plaintiff's Eighth Amendment rights by using excessive force and/or failing to intervene in the excessive force when the plaintiff was slammed onto the stairs and beaten; (4) defendants Beahm, Umentum, Olig, Bouzek, Bryan, Schneider and Beste allegedly violated the plaintiff's Eighth Amendment rights by conducting, participating in, and otherwise watching him be subjected to a manual, staff-assisted strip search without justification and for the purpose of humiliating him; (5) defendant Slinger allegedly violated the plaintiff's Eighth Amendment rights, and his rights under Wisconsin state law, by failing to treat his apparent injuries and claiming that he was "fine;" and (6) defendants Beahm, Umentum, Olig, Bouzek, Bryan, Schneider and Beste allegedly violated the plaintiff's Eighth Amendment rights by placing him in a cell, naked, with no

2

property or running water for nine hours, knowing that he still had a substantial amount of pepper spray on him; and by failing to clean the cell which was still contaminated with pepper spray. Dkt. No. 11 at 3-4.

## II. MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

A. Facts[1]

On May 24, 2015, the plaintiff was an inmate housed at the Waupun Correctional Institution (Waupun) in the restrictive housing unit, formerly known as segregation. Dkt. No. 49 at ¶1. The defendants were employed at Waupun. Id. at ¶2. Except defendant Slinger, who was a nurse, the defendants all were security staff members. Id.

1. *The Plaintiff's First Four Claims: Conduct Report 2608855 and Inmate Complaint GBCI-2015-10018*

Defendant Beahm issued the plaintiff a conduct report for his behavior on May 24, 2015, which included threats, disobeying orders, and disruptive conduct, prison rule violations under Wisconsin Administrative Code §§DOC 303.18, 303.28, and 303.33. Id. at ¶3. Beahm wrote the conduct report based on the following incident, as described in the report:

> On May 24, 2015, at approximately 11:50 a.m., I Officer Beahm was working my assigned post as the segregation side officer. I responded to a call over the radio for staff to report to A-122 which housed inmate Alexander [the plaintiff]. When I arrived at A-122 I observed inmate Alexander had his arms out the trap of the door resting his forearms on the trap holding the trap open, and restricting the trap from closing. Sgt. Vanderwerff was currently giving inmate Alexander directions to pull his hands back

[1] This section is taken from the Defendants' Proposed Findings of Fact, dkt. no. 49, and the Plaintiff's Response to the Defendants' Proposed Findings of Fact, dkt. no. 54.

into his cell. Inmate Alexander was very agitated and was arguing with Sgt. Vanderwerff and refusing to pull his hands back into his cell.

Lt. Schneider was called and arrived a short time later. Lt. Schneider attempted to talk to inmate Alexander at which time inmate Alexander continued to yell "fuck you fags, I don't have to do shit." Inmate Alexander would not pull his hands back. Lt. Schneider then directed me to place restraints on inmate Alexander so we could escort him to the strip cell for him to cool down and talk with the lieutenant. I then placed the long tether strap on the door and went to place the other end on inmate Alexander's wrist when he reached out attempting to grab staff. Inmate Alexander resisted having the restraint put on and grabbed a hold of my left hand. I again attempted to gain control of inmate Alexander's wrist which I was unable to do and he pulled his hands back into the cell. Lt. Schneider presented the MK-3 O.C. streamer and X-26 taser and inmate Alexander grabbed a towel and put it to the trap to prevent anything from coming in the cell. Numerous loud and clear directives were again given to inmate Alexander to come to the door and be restrained. Inmate Alexander refused and backed up further in his room and stated "Fuck you pussies, I'm not doing shit." At this time inmate Alexander put the towel up to his neck and Lt. Schneider dispensed a burst of the MK-3 O.C. streamer, with little to no effect on inmate Alexander. After more directives to come to the door were refused Lt. Schneider administered a second burst of the MK-3 O.C. streamer, which had the desired effect and inmate Alexander came to the door and placed his hands out to be restrained.

I then secured the left wrist while Lt. Schneider placed the handcuffs on and double locked them. The door was called to open and when it opened I directed inmate Alexander to kneel down so leg restraints could be applied. We then assisted inmate Alexander to the shower stall on Lower A range. Inmate Alexander was making several threatening and disrespectful statement such as, "you are all a bunch of redneck inbred fags" and "I'm going to kill you bitches, I swear this ain't over fags." Inmate Alexander was getting more worked up and tensing up. I instructed inmate Alexander to calm down and not resist the escort. I also informed inmate Alexander to face forward and that any sudden movement would be perceived as a threat to our safety.

We arrived at the shower stall and gave inmate Alexander some water from the shower to rinse off the incapacitating agents. Inmate Alexander was then removed from the water and Lt.

Schneider dried inmate Alexander's face off with a towel. Inmate Alexander then tensed up and began yelling loudly at which time Officer G. Umentum and I directed inmate Alexander to the door and directed him to calm down. We then escorted inmate Alexander off range to the strip cell. We had just left the range when inmate Alexander very loudly screamed and turned toward me. We then directed inmate Alexander to the wall to stabilize him and gain compliance when he turned toward me again and became increasingly resistive. We then directed inmate Alexander to the floor and more staff arrived to get inmate Alexander under control. Video documentation was started, now d[ue] to more staffing available. Inmate Alexander was then assisted to his feet and escorted to the strip cell. At the strip cell inmate Alexander was upset and wanted our escort to loosen up stating "I am not resisting anymore." A staff assisted strip search was conducted and Nurse Slinger did a medical assessment on inmate Alexander. Inmate Alexander was then escorted to A-231 and placed into control status per Lt. Schneider.

Dkt. No. 50-1, Ex. 1002 at 1-3. On May 26, 2015, the plaintiff received a copy of Conduct Report 2608855, which charged him with threats, disobeying orders, and disruptive conduct. Dkt. No. 49 at ¶24.

On June 4, 2015, the plaintiff filed offender complaint GBCI-2015-10018, about the May 24, 2015 incident. Id. at ¶25. In it, he complained that Schneider had sprayed him with pepper spray for no reason. Id. at ¶26. The plaintiff claimed that he then went to the door to be removed from his cell for what he thought would be a shower to wash off the chemical agents. Id. He complained that Beahm and Schneider were pulling, twisting, wrenching and what seemed like trying to break his arm and wrist, despite his cooperation. Id. at ¶27. The plaintiff said he then was slapped or slammed, face first, into the shower doors, and someone was pulling the shackles or kicking the chains to inflict pain. Id. at ¶28. The plaintiff claimed that after they left the shower area, staff slammed him face first into the steps, and punched and kicked him. Id.

The plaintiff complained that he then was forced to endure a staff-assisted strip search, and that no one gave him the opportunity to consent to the search. Id. at ¶29. The plaintiff also complained that he wasn't given a shower to wash off the spray. Id.

The institution complaint examiner rejected the plaintiff's inmate complaint as outside the scope of the inmate complaint review system. Id. at ¶30. The institution complaint examiner wrote:

> Conduct report 2608855 has been issued, and inmate Alexander is complaining of matters involved with the alleged incident. He is challenging the factual basis of the conduct report or describing mitigating factors to explain his actions and behavior. Those matters are considered during summary disposition or by a hearing officer/committee acting as an independent fact-finding body, and its judgment must be accepted. Once a conduct report is issued, the disciplinary process is initiated, and complaints of this nature are outside the scope of the inmate complaint review system as noted under DOC 310.08(2)(a), Wis. Adm. Code.

Id. The institution complaint examiner's decision rejecting the conduct report was sent to the plaintiff on June 5. Id. at ¶31. On June 8, the plaintiff signed his appeal of the rejection of complaint GBCI-2015-10018, which was received by the institution complaint examiner's office on June 22. Id. at ¶32. His appeal stated:

> Ms. Tonia Moon has a clear history & propensity of covering up staff misconduct. She brings up a "conduct report" – I am in no way challenging the "conduct report" that she alleges. She, with a clear & negligent intent – found a made up reason to reject the complaint so she doesn't have to investigate the issue at hand – abuse! Again, I'm in no way complaining about a conduct report! For this abuse to be allowed to proceed un-investigated & subsequently ignored, would be the ultimate miscarriage of justice while turning a blind eye to the pink elephant in the room. I am requesting for this issue to be remanded for investigation.

Dkt. No. 50-3 at 10. The warden affirmed the rejection on the same day. Dkt. No. 49 at ¶32.

On June 11, the plaintiff had his hearing on Conduct Report 2608855. Id. ¶33. At the hearing, the plaintiff claimed he never received the conduct report and that half of it was a lie. Id. As part his inmate statement, the plaintiff said:

> They beat the shit out of me, pepper sprayed me and left in the cell without a shower for 4 days. I did have my hand out of the trap, they didn't give me my lunch or shower, but then I did put my hand in. I called them rednecks, that's what they are. I've never done anything like this before.

Id. at ¶34. The hearing officer found the plaintiff guilty of all three rule violations, and he received a disposition of 90 days disciplinary separation. Id. at ¶35.

On June 15, the plaintiff submitted his appeal of the conduct report to the warden. Id. at ¶36. In his appeal, the plaintiff stated that the reason he was appealing the finding of guilt was because "I was never offered to call witnesses – which is a direct violation of my due process." Id. at ¶37. As for his reason for appealing the disposition, the plaintiff said, "90 days D.S. is a bit extreme." Id. at ¶38. The plaintiff alleged that he was denied due process because "having my witnesses could've cast a different light on the CR." Id. at ¶39. The plaintiff did not raise the issue of excessive force, pepper spray, inappropriate strip search or failure to give a shower in his appeal of the conduct report as mitigating factors for his behavior. Id. at ¶40. On July 3, 2015, the warden

affirmed the finding of guilt, but reduced the plaintiff's punishment to sixty days' disciplinary separation. Id. at ¶41.

### 2. *The Plaintiff's Fifth and Sixth Claims*

The plaintiff filed offender complaint GBCI-2015-9801, on June 1, 2015, regarding his placement in control status for nine hours. Id. at ¶42. The institution complaint examiner reviewed the control placement documents and determined that she should not second guess the judgments of the staff members who made the control placement. Id. at ¶43. The examiner recommended dismissal of the complaint to the reviewing authority, who agreed and dismissed the complaint. Id. at ¶44. The plaintiff never appealed the dismissal of the complaint GBCI-2015-9801. Id. at ¶45.

According to the defendants, the plaintiff never filed an offender complaint regarding the purported denial of medical treatment following the incident. Id. at ¶46. The plaintiff responds that he filed inmate complaint GBCI-2015-9802, complaining that staff did not follow policy after spraying him with pepper spray. Dkt. No. 57 at ¶46. He states that in rejecting the complaint, the institution complaint examiner acknowledged that the denial of medical care was part of the complaint by quoting policy, including, "As soon as possible after an incapacitating agent has been used, staff shall provide exposed inmates an opportunity for any necessary hygienic needs and shall consult with medical staff who shall provide any appropriate medical care." Id.

B.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

C.   Parties' Arguments

The defendants contend that the plaintiff failed to exhaust his administrative remedies as to his federal claims. Dkt. No. 48. According to the defendants, the plaintiff didn't exhaust as to his first four claims (excessive force, use of pepper spray, unlawful strip-search and denial of a shower) because he did not raise these issues in his appeal of the disciplinary decision on Conduct Report 2608855. Id. at 13-16. The defendants also argue that the plaintiff failed to exhaust as to his fifth claim, the alleged denial of medical treatment, because he did not file an offender complaint regarding the incident. Id. at 16-17. Finally, they contend that the plaintiff did not exhaust his sixth claim, regarding his placement in control status, because he failed to appeal the dismissal of inmate complaint GBCI-2015-9801. Id. at 18.

The plaintiff responds that inmate complaint GBCI-2015-10018 exhausted his administrative remedies as to his first four claims. Dkt. No. 53 at 4. The plaintiff contends the allegations in his inmate complaint did not "relate to" his conduct report. Id. at 3-4. He also asserts that the claims of excessive force, deliberate indifference and the unlawful strip search would not be considered "mitigating factors" for his behavior, because the behavior relied on for the finding of guilt had already occurred prior to the alleged constitutional violations and had no impact on the plaintiff's admitted rule violations. Id. at 4. The plaintiff further argues that his constitutional claims could not have been appealed to the warden as part of the disciplinary process, because only procedural errors and sufficiency of the evidence claims can be appealed. Id. at 5.

In their reply, the defendants contend that the plaintiff had an available administrative remedy for his excessive force claim related to the pepper spray, the failure to decontaminate of the pepper spray, excessive force related to the purported slamming onto the stairs and the unlawful strip search. Dkt. No. 56 at 2. According to the defendants, the plaintiff had sufficient guidance on the what he should have done (apparently, use the conduct report process to challenge these issues) because the institution complaint examiner told him the conduct report review process would address the matters he raised in his complaint about excessive force, the failure to decontaminate of the pepper spray and the unlawful strip search. Id. at 4. The defendants imply that this should have given the plaintiff a heads-up that he could challenge these issue through the conduct report process, but that he did not do so. The defendants argue that the plaintiff failed to exhaust on his excessive force claim related to the pepper spray, the failure to decontaminate of the pepper spray, excessive force related to the purported slamming onto the stairs, and the unlawful strip search because he failed to raise these issues in his appeal of the disciplinary decision. Id. at 6.

D.    Discussion

1.    *The Exhaustion Requirement*

According to the Prison Litigation Reform Act (PLRA) (which applies in this case because the plaintiff was incarcerated when he filed his complaint), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Various important policy goals give rise to the rule requiring administrative exhaustion, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record and reducing the scope of litigation. Smith v. Zachary, 255 F.3d 446, 450–51 (7th Cir. 2001).

The Department of Corrections' (DOC) Inmate Complaint Review System provides the administrative process for inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an inmate can file a lawsuit, he must exhaust all administrative remedies that the DOC has promulgated by rule. Wis. Admin. Code §DOC 310.05. Inmates should use the Inmate Complaint Review System to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code §DOC 310.08(1).

To use the Inmate Complaint Review System, an inmate must file a complaint with the institution complaint examiner within fourteen days after the occurrence that gives rise to the complaint. Wis. Admin. Code §§DOC 310.07(1), 310.09(6). After reviewing and acknowledging each complaint in writing, the institution complaint examiner either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§DOC 310.11(2), 310.11(11). The appropriate reviewing authority makes

a decision within ten days following receipt of the recommendation. Wis. Admin. Code §DOC 310.12. Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the corrections complaint examiner. Wis. Admin. Code §DOC 310.13(1). The corrections complaint examiner reviews the appeal and makes a recommendation to the Secretary of the DOC. Wis. Admin. Code §DOC 310.13(6). The Secretary may accept, adopt or reject the corrections complaint examiner's recommendation, or return the appeal to the corrections complaint examiner for further investigation. Wis. Admin. Code §DOC 310.14(2).

The institution complaint examiner rejects some inmate complaints at the institution level. Wis. Admin. Code. §DOC 310.11(5). In that case, the appropriate reviewing authority reviews only the basis for rejecting the complaint; he or she does not examine the merits of the complaint. Wis. Admin. Code §DOC 310.11(6). The reviewing authority's decision is final. Id.

"An inmate may not use the ICRS to raise ... any issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." Wis. Admin Code §DOC 310.08(2)(a). After the disciplinary process has concluded, an inmate may appeal a "disciplinary decision," including procedural errors, to the warden within ten days after receiving a copy of the decision. Wis. Admin. Code §DOC 303.82(1). The warden then must review all records and forms relating to the appeals and make a decision within sixty days. Wis. Admin. Code §DOC 303.82(2). The

warden's decision is final as it relates to sufficiency of the evidence. Wis. Admin. Code. §DOC 303.82(4). An inmate may, however, appeal claims of procedural error under the ICRS. Id. (citing Wis. Admin. Code §DOC 310.08(3)).

2. *The Court's Analysis*

a. The Plaintiff Exhausted Available Administrative Remedies as to his First Four Claims

The defendants' argument that the plaintiff did not exhaust his administrative remedies fails on two grounds. First, their argument assumes that inmate complaint GBCI-2015-10018 raised issues "related to" Conduct Report 2608855, such that Wis. Admin. Code §DOC 310.08(2)(a) applies and the issues fall outside the scope of the Inmate Complaint Review System. See Wis. Admin. Code §DOC 310.08(2)(a) ("An inmate may not use the ICRS to raise the following issues: (a) Any issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch.DOC 303.")

In determining whether an inmate complaint raises issues "related to" a conduct report, the relevant question is whether the subject of the inmate complaint "would have been germane to the question of [the prisoner's] guilt or innocence" of the conduct report. Rivera v. Lindmeier, 2013 WL 6806188, at *2 (E.D. Wis. Dec. 20, 2013). "On the whole, what the regulations mean is that inmates should not use the ICRS grievance process to contest the merits of their disciplinary actions." Id. at *3.

The plaintiff asserts that he didn't file the inmate complaint to challenge his conduct report; he filed it to challenge the defendants' alleged abuse. Case

law supports the plaintiff's position that inmate complaint GBCI-2015-10018, which complained of alleged staff abuse (some of which took place *after* the conduct for which he was found guilty at the disciplinary hearing), raised issues that were not germane to the plaintiff's guilt or innocence.

> [N]othing in the code says that an inmate cannot file an ICRS complaint about what correctional officers do in response to an inmate's conduct. Presumably it is quite common that conduct reports will be issued in conjunction with the imposition of punishments, and such punishments are often subject to Eighth Amendment claims brought under Section 1983. The mere fact that a conduct report was issued in a given case does not mean the inmate cannot file a grievance alleging that the punishment he received was cruel and unusual. It merely means that if he wants to challenge the validity of the conduct report, he must do so through the disciplinary process rather than ICRS.

Id.; see also Nelson v. Burns, 2018 WL 801534, at *2 (W.D. Wis. Feb. 9, 2018) ("As the court of appeals has noted in other contexts, a claim for excessive force and a disciplinary decision that the prisoner assaulted staff are not necessarily inconsistent.") (citations omitted). The court cannot conclude that the plaintiff's inmate complaint "related to" his conduct report; if it did not, his inmate complaint and the appeal of the rejection of that complaint exhausted the plaintiff's first four claims.

Even assuming that inmate complaint GBCI-2015-10018 did "relate to" the plaintiff's conduct report, such that he was required to exhaust the disciplinary process in accordance with ch. DOC 303 before filing an inmate complaint, the regulations permit inmates to use the Inmate Complaint Review System only to challenge the *procedure* used in the disciplinary process. Wis. Admin. Code §DOC 310.08(3). The plaintiff did not challenge the procedure

used in the disciplinary hearing on Conduct Report 260885, which means that the Inmate Complaint Review System was not an available administrative remedy after the plaintiff exhausted the disciplinary process.

More important, DOC regulations do not support the defendants' contention that the plaintiff failed to exhaust because he didn't raise the alleged staff abuse issues in his appeal of the disciplinary decision. Exhausting the disciplinary process in accordance with ch. DOC 303 allows a prisoner to challenge the "disciplinary decision" in the context of a disciplinary appeal. LaBrec v. Walker, 2017 WL 4174918, at *3 (W.D. Wis. Sept. 20, 2017). The regulation does not require inmates to exhaust by raising issues like they do with the Inmate Complaint Review System.

While the defendants argue that the institution complaint examiner told the plaintiff when he rejected inmate complaint GBCI-2015-10018 what the plaintiff had to do to exhaust under ch. DOC 303, the court disagrees that the examiner provided the plaintiff with guidance. He only mentioned ch. 303 which, as explained above, does not require specific exhaustion of an appeal of a disciplinary decision.

The court finds that the plaintiff has exhausted his available administrative remedies as to his first four claims, and will deny the defendants' motion to summary judgment as to those claims.

                b.      The Plaintiff Failed to Exhaust as to his Fifth and Sixth Claims

The plaintiff did not respond to the defendants' contentions that he failed to exhaust his administrative remedies as to his fifth and sixth claims. The

16

plaintiff's fifth claim is that defendant Slinger didn't treat his injuries on May 24, 2015. The plaintiff argues, in a response to the defendants' proposed finding of fact, that his inmate complaint GBCI-2015-9802 exhausted that claim. Dkt. No. 57 at ¶46. The plaintiff's inmate complaint, however, did not raise the issue of medical care. Rather, he complained that "Lt. Schneider pepper sprayed me & never offered me a shower." Dkt. No. 55-1 at 3. The inmate complaint examiner's rejection comment quotes WCI Policy and Procedure 814.03 and 814.11: "As soon as possible after an incapacitating agent has been used, staff shall provide exposed inmates an opportunity for any necessary hygienic needs and shall consult with medical staff who shall provide any appropriate medical care." Id. at 1. According to the plaintiff, the institution complaint examiner acknowledged that the denial of medical care was part of the complaint by quoting that policy. Dkt. No. 57 at ¶46. The court disagrees; noting that institution policy requires consultation with medical staff is not the same thing as deciding whether the plaintiff did, or did not, receive proper medical care. The plaintiff did not *raise* the issue in his inmate complaint. See Wis. Admin. Code §DOC 310.09(1)(e). The court finds that the plaintiff has not exhausted administrative remedies as to this claim.

In his sixth claim, the plaintiff alleges that he was placed in control status for nine hours. The plaintiff filed inmate complaint GBCI-2015-9801 raising this issue. But it is undisputed that he didn't appeal the dismissal of that complaint. Therefore, the plaintiff did not exhaust as to this claim. See Wis. Admin. Code §DOC 310.13(1).

### III.    MOTION TO DISMISS PLAINTIFF'S STATE LAW CLAIM

The defendants have filed a separate motion, asking the court to dismiss the plaintiff's state law medical malpractice claim against defendant Nurse Ann Slinger. Dkt. No. 51. In Judge Jones's screening order, he allowed the plaintiff to proceed on a Wisconsin state law medical malpractice claim against Slinger for allegedly denying him medical treatment after the May 24, 2015 incident. Dkt. No. 11 at 4-5. The defendants urge the court to dismiss this claim because Wisconsin law does not permit a plaintiff to sue a nurse employed by the state for medical malpractice, citing Northern v. Frisk, 2017 WL 2589426, at *1 (W.D. Wis. June 14, 2017); Redman v. Doehling, 2017 WL 6501910, *10 (E.D. Wis. Dec. 19, 2017). Dkt. No. 51 at 1-2. According to the defendants, Chapter 655 of the Wisconsin Statutes provides the exclusive remedy for medical malpractice claims in Wisconsin. Id. at 3-4. The defendants also contend that Chapter 655 does not contemplate medical malpractice suits against individual nurses, nor does it permit such suits against the State. Id. at 4-5. The plaintiff did not file a response to the motion to dismiss.

"Chapter 655 constitutes the exclusive procedure and remedy for medical malpractice in Wisconsin *against health care providers*, as that term is defined in Wis. Stat. §655.001(8), *and their employees*." Killian v. Nicholson, 2018 WL 1902587, at *2 (E.D. Wis. Apr. 20, 2018) (quoting Phelps v. Physicians Ins. Co. of Wis., Inc., 319 Wis. 2d 1 (2009) (emphasis in the original)). Nurses do not qualify as "health care providers" under Chapter 655. Patients Compensation Fund v. Lutheran Hosp. – La Crosse, Inc., 216 Wis. 2d

49, 55-56 (Ct. App. 1997). A plaintiff generally may sue a nurse's employer for alleged malpractice, Wis. Stat. §655.23(5), but not if the employer is a public entity, Wis. Stat. §655.003.

The defendants correctly state that the plaintiff may not sue defendant Slinger under Chapter 655 because she is not a "health care provider" under the statute, and because she works for a Wisconsin state prison. The defendants incorrectly assume, however, that Chapter 655 is the only way to bring a medical malpractice claim.

> Medical malpractice claims are claims of "negligent medical acts or decisions made in the course of rendering professional medical care." *McEvoy v. Group Health Coop.*, 213 Wis. 2d 507, 530, 570 N.W.2d 397 (1997). Therefore, medical malpractice claims are grounded in Wisconsin negligence common law: "*In a medical malpractice claim, like in any negligence claim*, the plaintiff must establish '(1) a breach of (2) a duty owed (3) that results in (4) an injury ...." *Estate of Hegarty v. Beauchaine*, 2006 WI App 248, ¶ 153, 297 Wis. 2d 70, 727 N.W.2d 857 (2006) (emphasis added). This conclusion is supported by the history of Chapter 655 which clearly shows that the Wisconsin legislature was not concerned about creating a cause of action for medical malpractice. Instead, it was concerned about controlling medical malpractice claims and the "'sudden increase in the number of malpractice suits, in the size of awards, and in malpractice insurance premiums.'" *Czapinski v. St. Francis Hosp.*, 236 Wis. 2d 316, 326, 613 N.W.2d 120 (2000) (citing *State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 509, 261 N.W.2d 434 (1978) ). Stated another way, Chapter 655 was created to provide limitations on medical malpractice claims, not to establish it as a cause of action.

Killian, 2018 WL 1902587, at *2-*3.

Like the court in Killian, this court will not interpret Chapter 655 to eliminate common law medical malpractice claims against individuals not subject to Chapter 655, without clearer direction from the Wisconsin courts or legislature. See id. at *3; see also Smith v. Hentz, 2018 WL 1400954, at *3

(W.D. Wis. Mar. 19, 2018). The court rejects Slinger's contention that it must dismiss the medical malpractice claim against her because she is not subject to Chapter 655. The plaintiff still has a common law claim for medical malpractice against Slinger. See Killian, 2018 WL 1902587, at *3. The court will deny Slinger's motion to dismiss.

## IV.    SUMMARY

In summary, the court denies the defendants' motion for summary judgment as to the plaintiff's first four claims, and grants summary judgment as to the plaintiff's fifth federal claim and sixth claim. The court denies defendant Slinger's motion to dismiss.

The following claims remain: (1) the claim that defendants Beahm and Schneider allegedly used excessive force against the plaintiff in violation of the Eighth Amendment by pepper-spraying him without justification; (2) the claim that defendants Beahm, Umentum, Olig, Bouzek, Bryan and Schneider allegedly violated the plaintiff's Eighth Amendment rights by failing to decontaminate him of the pepper spray; (3) the claim that defendants Beahm, Umentum, Olig, Bouzek, Bryan, Beste (formerly Jane Doe) and Schneider allegedly violated the plaintiff's Eighth Amendment rights by using excessive force and/or failing to intervene in the excessive force when the plaintiff was slammed onto the stairs and beaten; (4) the claim that defendants Beahm, Umentum, Olig, Bouzek, Bryan, Schneider and Beste allegedly violated the plaintiff's Eighth Amendment rights by conducting, participating in, and otherwise watching him be subjected to a manual staff-assisted strip search

without justification and for the purpose of humiliating him; and (5) the claim that defendant Slinger allegedly violated the plaintiff's rights under Wisconsin state law, by failing to treat his apparent injuries and claiming that he was "fine."

## V.  CONCLUSION

The court **GRANTS IN PART AND DENIES IN PART** the defendants' motion for summary judgment, as described in this order. Dkt. No. 47.

The court **DENIES** the defendants' motion to dismiss the plaintiff's state law medical malpractice claim. Dkt. No. 51.

The court **ORDERS** that the parties may file dispositive motions on the merits of the plaintiff's remaining claims in time for the court to receive them by the end of the day on **Friday, October 5, 2108**. Parties shall file briefs in opposition in time for the court to receive them by **Wednesday, November 7, 2018**; they shall file reply briefs (if they choose to do so) in time for the court to receive them by the end of the day on **Wednesday, November 21, 2018**.

Dated in Milwaukee, Wisconsin this 31st day of August, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**